THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD L. SHARP, Defendant-Appellant.

Fifth District No. 5—87—0257

Opinion filed June 16, 1989.—Rehearing denied July 18, 1989.

V. Robert Matoesian, of Granite City, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Donald L. Sharp, appeals from an order of the circuit court of Madison County sentencing him to 30 months' probation, with the first 12 months being intensive probation, seven consecutive days in the county jail, to attend alcohol treatment as recommended by the Department of Probation, to serve 18 months of periodic imprisonment in the Madison County jail with credit for time served and to pay decedent's widow a minimum of $600 per month for five years as restitution. In this cause, defendant raises the following issues: (1) whether the trial court abused its discretion in ordering defendant to pay $600 per month as well as 50% of any overtime earnings for five years to the victim's spouse as restitution; (2) whether the trial court erred in admitting evidence at the sentencing hearing that the victim was killed; and (3) whether the sentence of 18 months' periodic imprisonment was excessive.

Because the instant case rests upon defendant's plea of guilty, we take our facts from the probation report and the sentencing hearing. In the early morning of July 10, 1985, a motorcycle driven by Charles

Wiley, victim, was struck from behind by an auto driven by defendant. The accident occurred on Illinois Route 111. Defendant stopped at the scene for a brief time, reentered his vehicle, and left the scene. Defendant then abandoned his car and "popped" the ignition so as to make it look as though his vehicle had been stolen. Defendant then reported to the Pontoon Beach police department that his car had been stolen. The victim, Charles Wiley, age 56, was hospitalized with injuries and subsequently died. Defendant was identified as the driver on July 12, 1985, by a witness to the accident. Defendant initially stated that he had no knowledge of the fatal accident. He then admitted that he had not seen the motorcycle before he hit it. He stated that he stayed at the scene until someone arrived, but panicked and left the scene.

Defendant was originally charged by the State with failing to file an accident report within 48 hours of an accident involving personal injury or death. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(b).) On November 13, 1985, defendant pleaded guilty and after a sentencing hearing was sentenced to 30 months' probation, the first 12 months to be intensive probation, to pay decedent's widow $50,000 as restitution, to serve 18 months' periodic imprisonment in the Madison County jail, and to receive alcohol and drug testing and/or counseling as required. On March 24, 1986, defendant filed a motion to withdraw his guilty plea, which was granted on July 1, 1986. On October 11, 1986, the State filed an amended information charging defendant with two counts of reckless homicide (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)), failure to report a motor vehicle accident involving personal injury or death (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(b)), driving while license revoked (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303(a)), and failure to decrease speed to avoid an accident (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601(a)). On December 1, 1986, defendant pleaded guilty to failure to report an accident, driving while license revoked, and failure to decrease speed to avoid an accident. In exchange for defendant's plea of guilty, the State dismissed the two counts of reckless homicide. Defendant was then sentenced to 30 months' probation with the first 12 months to be intensive; seven consecutive days' incarceration for driving while license revoked; to attend alcohol treatment as recommended by the Probation Department; to serve 18 months of periodic imprisonment with credit for time served; to pay $600 per month for five years to the victim's widow as restitution; and if defendant had an opportunity to work overtime, to pay 50% of these net earnings as additional restitution to the victim's widow.

■ Defendant's first issue on appeal is whether the restitution order was an appropriate exercise of judicial discretion. Specifically, defendant argues that the trial court abused its discretion in ordering defendant to pay $600 per month as well as 50% of any overtime earnings for five years to the victim's spouse. Defendant submits that restitution can only be ordered for the named victim's funeral expenses and medical bills and further contends that the trial court was wrong to consider the victim left a widow who was deprived of a husband and support.

The restitution order was made pursuant to section 5—5—6(b) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6(b)), which states, in pertinent part:

"(b) In fixing the amount of restitution to be paid in cash, the court shall allow credit for property returned in kind, for property damages ordered to be repaired by the defendant, and for property ordered to be restored by the defendant; and after granting such credit, the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and such other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant, and insurance carriers who have indemnified the named victim or other victims for such out-of-pocket expenses, losses, damages, or injuries, provided that in no event shall restitution be ordered to be paid on account of pain and suffering."

The term "victim" is defined by section 5—1—22 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—1—22) as having "the meaning ascribed to it in subsection (a) of Section 3 of the Bill of Rights for Victims and Witnesses of Violent Crime Act. [Ill. Rev. Stat. 1987, ch. 38, par. 1403.]" Therein, the term "victim" is defined as including "the spouse, parent, child or sibling of a person killed as a result of a violent crime perpetrated against the person killed." (Ill. Rev. Stat. 1987, ch. 38, par. 1403(a)(3).) A violent crime is defined as "any felony in which force or threat of force was used against the victim or any misdemeanor which results in death or great bodily harm to the victim." (Ill. Rev. Stat. 1987, ch. 38, par. 1403(c).) Under these definitions, we find that Charles Wiley's spouse qualifies as a victim of a violent crime.

Defendant's actions were the cause of Charles Wiley's death. Defendant's driving while his license was revoked, a Class A misdemeanor, and failure to reduce speed to avoid an accident, another

Class A misdemeanor, can be considered violent crimes inasmuch as had defendant not been driving and had defendant reduced his speed and avoided the accident, the victim would not have been hit from behind and killed. Moreover, a review of the House of Representatives floor debate on the bill (House Bill 67 (1983)) which amended sections of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1003—1—1 *et seq.*) makes it clear that it was the legislative intent to allow victims not named in a complaint to receive restitution. Having decided that decedent's spouse is a victim under Illinois law, we must now consider whether the trial court's order of $600 per month plus 50% of any overtime defendant works for five years is justified under section 5—5—6(b) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b)).

■ Trial courts are given wide discretion to determine the penalty appropriate to the circumstances of each case. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) In the instant case, the statute under which restitution was ordered provides for "actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and such other victims who may also have suffered" but fails to define these terms. We find no Illinois precedent to guide us in this matter.

At the first sentencing hearing, there was testimony by decedent's eldest stepson concerning decedent's income prior to his death.

"THE COURT: What was your father's earnings?

A. The last—Well, my father was a machinist. Good Lord. That's—With the children my father never really spoke that much about his money. My Mom had something about some taxes from the year before on my dad, and I think they was somewhere that particular year my father made thirty-two thousand dollars. Now, that was two years ago."

This was the extent of any discussion of decedent's income. No tax forms were introduced into evidence. As to decedent's spouse, there was some testimony that she was forced to quit her job after her husband's death due to illness:

"Q. Okay, Mrs. Wiley, how much were you making on at your place of employment?

A. I drew five dollars and ten cents an hour. It had cleared at three hundred and eighty-nine dollars every two weeks.

Q. Okay.

A. So it was about four hundred. I don't know. I know I cleared three hundred and eighty-nine dollars every two weeks every other Friday.

Q. And have you talked to your doctor about returning to work?

A. And he said no.

Q. Okay. Not ever?

A. Not at this time, no.

Q. Okay. Has he given you any hopes in maybe going back?

A. No, he said—See, I was in housekeeping, and we had such an area. I couldn't keep up with it.

Q. Okay.

A. I have asthma and I don't get enough oxygen in my body that I have to stop and catch my breath all the time.

Q. Okay. Now, was the reason that you had to stop working was in part due to your asthma?

A. That's when it affected me. The morning I got sick I just started crying. I couldn't quit.

Q. Well, did you have asthma before then?

A. No, I never had it before.

Q. Oh, and when did this occur, mam?

A. In November about two weeks before Thanksgiving.

Q. How long after the accident?

A. Well, my husband passed away July 10th."

At the close of the testimony after the first sentencing hearing, the trial court ordered defendant to pay decedent's widow $50,000 in restitution. The court stated:

"And finally you will make restitution to Mrs. Wiley in the amount of fifty thousand dollars, and I want it clear that that does—is not an indication of this court's evaluation of their loss in terms of economic matters only. There can be no restitution ordered by me as a judge for the grief that they suffer as a result of the loss of Mr. Wiley. So that that is not a part of this at all. But neither is the fifty thousand dollars restitution I am ordering any indication in my mind as to the economic loss only. As Mr. Matoesian [defense counsel] pointed out in his cross-examination there may well be a civil suit filed as a result of Mr. Wiley and what happens in that case is not before me, and at this point I obviously have no control over them. This fifty thousand dollars that I am ordering you to pay as a condition of your probation is only in my judgment partial and not in any way replace the loss in terms of economics only."

In March 1986, defendant withdrew his guilty plea and was subsequently recharged by the State. The State and defendant then reached the plea agreement previously described. In conjunction with

the plea agreement, defendant agreed to pay decedent's widow $250 per month for five years as reparation. However, in the second sentencing hearing, the judge reiterated that this order of restitution was inadequate in view of decedent's salary, but had to also consider that defendant had to fulfill his own basic needs. The trial court then ordered defendant to pay decedent's widow $600 per month for five years plus half of any overtime earnings for a minimum of $36,000.

After a close examination of the sentencing transcript, we are unable to determine how the trial court arrived at its award of restitution to decedent's widow. There was testimony as to funeral bills totalling $3,600 and medical bills totalling approximately $14,500 by decedent's stepson. The probation report stated that decedent's funeral bills totalled only $3,150. The lost earnings of decedent and decedent's widow were far from proven under proper evidentiary rules. Moreover, decedent's widow's lost wages were not proven to be a result of her husband's death. There was no medical testimony connecting her asthma to the death of her husband.

As we indicated earlier, this is a case of first impression. The general purpose of the Code of Corrections is to rehabilitate the offender, if possible, and to restore him to useful citizenship. (Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—2; *People v. Mahle* (1974), 57 Ill. 2d 279, 312 N.E.2d 267.) We are concerned that in the instant case, the probation system is not being used for rehabilitative purposes, but comes close to imposing civil liability. In interpreting California's restitution statute, the California Supreme Court stated:

> "Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. *** A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money."

*People v. Richards* (1976), 17 Cal. 3d 614, 620, 552 P.2d 97, 101, 131 Cal. Rptr. 537, 541.

The Michigan Supreme Court, in *People v. Becker* (1957), 349 Mich. 476, 489, 84 N.W.2d 833, 839, pointed out the weakness of such a practice. In striking down a probation condition requiring a defendant convicted of leaving the scene of an accident to pay the medical expenses of the pedestrians he hit, the court declared:

> "The liability *** is fixed by the [trial] court. How? Is it by a

trial in open court, upon pleadings, defining the claims and issues, with the taking of testimony under oath, confrontation of witnesses, cross-examination, and an assertion of defenses, including that of contributory negligence? Clearly not. It was determined, says the court, 'from my investigation.' " (349 Mich. at 489, 84 N.W.2d at 839.)

Members of our own General Assembly voiced such concern over changes to the restitution statute (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—6(b)) attempting to impose civil liability without due process as evidenced by the following colloquy on House Bill 67 during floor debate:

> "Greiman [Representative from Cook County]: Does the defendant have a right to have a jury determine how much the value of the items are for which there's been a loss or alleged loss?
>
> Hawkinson [Representative from Knox County]: *** Mr. Greiman, that is not presently the law, nor would it be under this bill. However, as we have under the present Law when there is a dispute as to restitution, the prosecutor, through testimony elicited from the victims, still must prove that up in front of the Judge and the Judge makes the determination. That burden of proof and the procedure would not change under this Bill.
>
> Greiman: Well, so how do we deny the defendant his constitutional right to have a jury determine that? Don't you believe that he has a constitutional right in a civil matter, essentially civil?
>
> Hawkinson: No. Under the present law, this determination is made only after a conviction or a finding of guilty for which, of course, he has the right to jury, but there is not right to determination of that, except in those instances where the value is determinative of whether it's a misdemeanor or a felony." 83d Ill. Gen. Assem., House Proceedings, April 7, 1983, at 53-54 (statements of Representatives Greiman & Hawkinson) (House Bill 67).

■ Defendant's liability to the decedent's widow cannot be based merely on the trial court's belief that defendant owes her some compensation. Since defendant pleaded guilty to failure to reduce speed to avoid an accident, he did admit liability. However, there was no duty placed on him, nor could it be placed on him, during a sentencing hearing to prove that he was not civilly liable. It may in fact be that the State can prove "actual loss" by decedent's wife up to and beyond

the restitution ordered by the court; however, we find no evidence that the minimum limits imposed by the trial court were proven up by the State. This court is not disputing that substantial economic loss was suffered by the victim's family as a result of this tragic incident. The problem is that the testimony in the present action failed to prove the economic loss suffered as a result of the offenses.

■ The General Assembly clearly intended to allow more victims to recover under section 5—5—6(b) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b)) and to allow such victims to recover more. However, in the case before us, the restitution order is defective. It was made absent the due process rights assured to every litigant. We reverse and remand the restitution order of the trial court requiring defendant to pay $600 per month plus 50% of his net earnings on any overtime. Upon remand, defendant is entitled to at least minimal discovery rights including, but not limited to, interrogatories and depositions in order to determine the victims "who may have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—6(b).) The parties may agree to stipulate to the amount of loss proximately caused by defendant's conduct, yet this will not bind the trial court to allow restitution only for an agreed-upon amount. All trial courts are afforded broad powers to enforce discovery rules and discovery orders under Supreme Court Rule 219 (107 Ill. 2d R. 219). The trial court should take an active role in this discovery process to ascertain losses suffered by the decedent's wife.

■ Defendant's second issue on appeal is whether the trial court erred in admitting evidence at the sentencing hearing that the victim was killed. Defendant argues that because he did not plead guilty to reckless homicide or murder, it was prejudicial to admit evidence at the sentencing hearing that defendant's conduct resulted in death to the victim. Defendant cites no law for this argument.

An appellant has a positive duty to support each point made in its appeal with contentions, citation of authorities, and references to pages of the record. Without such, the point is considered waived. (*Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644, 459 N.E.2d 1382; 113 Ill. 2d R. 341(e)(7).) Assuming, *arguendo*, that defendant did not waive this point, we find that it was not error for the trial court to admit evidence that defendant's conduct resulted in the death of the victim. Defendant pleaded guilty to failure to report an accident involving personal injury or death within 48 hours. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—401.) In order to meet the elements of this charge, it must be proven that the victim did suffer per-

sonal injury or *die* as a result of defendant's conduct. Therefore, it was not prejudicial to defendant that the State argued that defendant died. Additionally, rigid adherence to usual rules of evidence is not required at a sentencing hearing. (*People v. Wallace* (1988), 170 Ill. App. 3d 329, 524 N.E.2d 677.) The trial court may search anywhere within reasonable bounds for facts which tend to aggravate or mitigate the offense. (170 Ill. App. 3d 329, 524 N.E.2d 677.) We find the argument by the State that this was negligent homicide was within the reasonable bounds of factors in aggravation. The trial court did not err in considering the fact that the victim died.

 We turn next to defendant's final argument that the 18-month periodic imprisonment sentence was excessive. Defendant maintains that this sentence is severe compared to similarly situated defendants in Madison County.

All penalties must be determined both according to the seriousness of the offense and with the objective of restoring the citizen to useful citizenship. (Ill. Const. 1970, art. I, §11; *People v. Branham* (1985), 137 Ill. App. 3d 896, 902, 484 N.E.2d 1226, 1231.) It is also true, however, that the primary responsibility for striking the proper balance between these two factors rests with the trial court. (*People v. Crosser* (1983), 117 Ill. App. 3d 24, 32, 452 N.E.2d 857, 864.) As a reviewing court, we will reduce a sentence only where it constitutes a substantial departure from the fundamental spirit and purpose of the law and is an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

In the instant case, the sentencing court was aware that defendant drove his car into the rear of a motorcycle, causing the victim to be thrown from the motorcycle. Defendant stopped his car, exited, looked at the body of the victim from some distance, and left the scene. Defendant then abandoned his vehicle some distance from the accident site after "popping" the ignition to make it appear as though the car had been stolen. Defendant failed to notify the authorities of his involvement in the accident within 48 hours, as required by law. Defendant called the Pontoon Beach police department apparently while in an intoxicated condition and informed the dispatcher that his automobile had been stolen from his apartment's parking lot. Defendant had a prior history of drunken driving and illegal transportation of alcohol. In fact, defendant's driver's license had been revoked two months prior to the time when he struck and killed the motorcyclist. The trial court had ample evidence before it of defendant's prior convictions involving alcohol and the implication of continued alcohol abuse. Based on these facts, we cannot say that defendant's sentence

of 18 months' periodic imprisonment was an abuse of discretion.

For the foregoing reasons, this court affirms in part and reverses in part the judgment of the circuit court of Madison County, and remands for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded.

WELCH, P.J., and HARRISON, J., concur.