THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KYLE DEAN OTTEN, Defendant-Appellant.

Fourth District   No. 4—91—0726

Opinion filed April 23, 1992.—Rehearing denied June 1, 1992.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

The trial court revoked the burglary probation of defendant, Kyle Dean Otten, and sentenced him to four years in prison. The court also ordered defendant to pay restitution. Prior to defendant's sentencing hearing, the court found him in contempt and sentenced him to 30 days in jail. Defendant appeals his sentence, arguing that (1) the trial court erred in not giving him credit against the four-year sentence for the time he served in jail for contempt, and (2) the trial court's order of restitution was defective. We affirm and remand with directions.

## I. FACTS

The trial court originally sentenced defendant to 30 months of probation in May 1989 after he pleaded guilty to burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a)). As a condition thereof, the court required him to serve 60 days in jail. According to the presentence report prepared in May 1989, the burglary victim reported a total loss of $1,401.96. Accordingly, the trial court ordered both defendant and his codefendant, Norman Patheal, who was before the court for sentencing at the same time as defendant, to pay restitution of $1,401.96. The court also specifically directed that both defendants were jointly and severally liable for the restitution.

The court ordered Patheal to pay $50 per week beginning with his first paycheck. The court ordered defendant, also as a condition of probation, to make a good-faith effort to obtain a job as soon as he completed serving his 60 days in the county jail. The court further directed defendant to submit a plan to the court within the first 90 days of his probationary period to explain how he proposed to pay the restitution as ordered.

A second codefendant, Michael Orr, was found guilty of the same burglary following a jury trial, and in June 1989, the trial court sentenced him to probation on the condition that he pay restitution of $300.

In April 1990, the State filed a petition to revoke defendant's probation. In June 1990, defendant admitted to the allegations in the petition, and the trial court then extended his probation for an additional six months and imposed certain additional conditions of probation.

In May 1991, the State filed a second petition to revoke defendant's probation, alleging in part that he failed to pay restitution and to obtain his educational certificate. In July 1991, the trial court conducted a hearing on this petition, found that the State had proved the

above allegations, and allotted the matter for sentencing on August 9, 1991. The court also directed the probation department to prepare a supplemental presentence report.

On August 7, 1991, the probation office reported in writing to the trial court that defendant failed to appear for his presentence investigation interview on July 15, 1991, and had failed to contact that office at any time thereafter despite letters the office had mailed to defendant directing him to do so. Upon receiving that report from the probation office, the court on its own motion entered an order that required defendant to appear on August 9, 1991, the date that his sentencing hearing was originally allotted "to show cause, if any he has, why he should not be held in contempt of court for failure to cooperate with the Adams County Probation Department in the preparation of Presentence Investigation Report herein."

On August 9, 1991, defendant appeared with his counsel. The trial court began the hearing by noting the action it had taken on August 7, 1991, and asking if the parties were ready to proceed on the contempt matter. They replied that they were, and the trial court then immediately addressed defense counsel and asked if he wished "to offer any evidence." Defense counsel responded by calling defendant to testify. Defendant then explained that he had not contacted the probation office because, "from 7 o'clock in the morning till 6 o'clock at night," he was looking for work. He also claimed that he never received a letter from the probation office directing him to contact that office immediately.

The probation officer then testified that he met personally with defendant on July 3, 1991, and told him the date he should appear at the probation office for an interview. The probation officer testified that defendant did not appear, that the officer had sent a letter to defendant at his last known address directing him to contact the officer immediately, but defendant had not responded to that letter.

No further evidence was presented at this contempt hearing. The court then stated to defense counsel, "[s]ince the burden is on the defendant to show cause you may be heard first in argument." After hearing arguments from both counsel, the court found that "defendant has been contemptuous in his failure and refusal to cooperate with the probation department. *** The defendant will be sentenced to the Adams County Jail for 30 days for contempt, no credit for good time, no day for day." The trial court then allotted defendant's burglary resentencing hearing for September 3, 1991.

After hearing evidence and argument at the resentencing hearing on September 3, 1991, the trial court sentenced defendant to four

years in prison and gave him credit on that sentence for 60 days he spent in jail as a condition of his probation. The court further stated the following:

"By law, [defendant] is not entitled to credit for the 25 days he has spent thus far for contempt of court. The remaining five days of that sentence will be vacated and he will begin serving his sentence once again with time running."

The court further ordered defendant to pay the balance of restitution and costs he owed within one year after his discharge from prison.

## II. CREDIT AGAINST PENITENTIARY SENTENCE
### FOR TIME SERVED FOR CONTEMPT

Citing *People v. Hutchcraft* (1991), 215 Ill. App. 3d 533, 574 N.E.2d 1337, defendant argues that the trial court erred by failing to grant him credit on his penitentiary sentence for time he served in the county jail for contempt while on probation. *Hutchcraft* focused on section 5—8—7(b) of the Unified Code of Corrections (Code), which reads as follows:

"The offender shall be given credit on the determinate sentence *** for time spent in custody as a result of the offense for which the sentence was imposed ***." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—7(b).)

In *Hutchcraft*, the defendant was on probation for burglary when the State filed a petition entitled, "[p]etition to revoke probation, conditional discharge or court supervision, *or in the alternative to hold the defendant in contempt.*" (Emphasis added.) (*Hutchcraft*, 215 Ill. App. 3d at 539, 574 N.E.2d at 1340.) As the title to that petition makes clear, the State alleged that the defendant was in contempt because he had violated conditions of his probation by wilfully failing to advise the probation office of his current address and by wilfully failing to report to the probation officer as directed. (*Hutchcraft*, 215 Ill. App. 3d at 536, 574 N.E.2d at 1338-39.) Based upon the State's petition, the trial court found the defendant in contempt and sentenced him to the county jail. (*Hutchcraft*, 215 Ill. App. 3d at 536, 574 N.E.2d at 1338-39.) Under these circumstances, this court held that the trial court's incarcerating defendant for contempt was essentially no different than incarcerating him on a petition for revocation of his probation because both kinds of incarceration stemmed from defendant's violating conditions of his probation. Accordingly, defendant was entitled to credit against the subsequently imposed prison sentence for time he served in the county jail for contempt. *Hutchcraft*, 215 Ill. App. 3d at 539, 574 N.E.2d at 1340.

We find *Hutchcraft* factually distinguishable from the present case. Instead, the facts in the present case are more like those in *People v. Sanders* (1983), 115 Ill. App. 3d 364, 450 N.E.2d 896, and *People v. Brents* (1983), 115 Ill. App. 3d 717, 450 N.E.2d 910, in which both courts rejected a defendant's argument that he was entitled to credit for time served on a contempt sentence.

In *Sanders*, defendant was charged with forgery and ordered to submit handwriting exemplars. The trial court held him in contempt when he refused to do so. (*Sanders*, 115 Ill. App. 3d at 365, 450 N.E.2d at 897.) Defendant later pleaded guilty to forgery and was sentenced to seven years in prison. The trial court declined to give him credit on that sentence for 121 days he spent in jail as a result of the contempt order. On appeal, this court affirmed. *Sanders*, 115 Ill. App. 3d at 367, 450 N.E.2d at 898.

In *Brents*, defendant was sentenced to 20 years in prison on his armed robbery conviction. Earlier, during defendant's preliminary hearing on that charge, he had become unruly in court, was held in contempt, and sentenced to serve six months in jail. (*Brents*, 115 Ill. App. 3d at 718, 450 N.E.2d at 911.) However, after defendant served four months of that contempt sentence, he was sentenced on the armed robbery conviction, and thereafter entitled to credit for the remaining time he spent in the county jail against his 20-year sentence for armed robbery. The trial court refused to give defendant credit for the four months he served on contempt prior to his being sentenced on the armed robbery charge, and defendant appealed. The appellate court affirmed the trial court's denial of credit and explained as follows:

> "To hold otherwise would greatly diminish a defendant's incentive to comply with the trial court's order respecting proper decorum in the courtroom and render the contempt citation itself meaningless and inoperative." *Brents*, 115 Ill. App. 3d at 721, 450 N.E.2d at 913.

■ We agree with the holdings in *Sanders* and *Brents* and conclude that giving defendant in the present case credit for the time he spent in jail on contempt would greatly diminish a defendant's incentive to comply with the trial court's orders regarding his reporting to the probation office so that a presentence report can be prepared.

Despite our holding regarding the issue of defendant's credit for time served, we nonetheless point out that the contempt procedures utilized at the trial level were flawed. Even though defendant has not raised any issue on appeal regarding those procedures, we fear that our failure to address this subject might mislead trial courts and at-

torneys into believing that the procedures used in this case were appropriate.

The most striking feature about the contempt proceedings in the present case is the apparent confusion by all trial level participants regarding the nature of the contempt charge at issue. In *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 558 N.E.2d 404, this court discussed at some length the distinguishing characteristics of civil and criminal contempt (see *Betts*, 200 Ill. App. 3d at 43-47, 558 N.E.2d at 415-18) and direct and indirect contempt (see *Betts*, 200 Ill. App. 3d at 47-48, 558 N.E.2d at 418-19), and wrote the following:

> "The primary determinant of whether contempt proceedings are civil or criminal in nature is the purpose for which contempt sanctions are imposed. If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act—the contempt is civil in nature. On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Betts*, 200 Ill. App. 3d at 43, 558 N.E.2d at 415.

The record in the present case does not make clear whether the trial court incarcerated defendant for contempt until such time as he complied with the court's requirement to cooperate with the probation office (civil contempt), or, instead, to simply punish defendant for his failure to cooperate (criminal contempt). Our difficulty with viewing the contempt order as civil in nature is that the trial court never specified what defendant must do in order to be released from jail. As we explained in *Betts*,

> "Civil sanctions are *prospective* in nature; they seek to coerce compliance at some point in the future. That point might be immediate compliance in open court or whenever the contemnor chooses to use his 'key'—namely, compliance—to open the jailhouse door." (Emphasis in original.) (*Betts*, 200 Ill. App. 3d at 46, 558 N.E.2d at 417.)

The trial court in the present case gave no indication what that "key" might be.

On the other hand, our difficulty with viewing the trial court's contempt order as criminal in nature is that defendant was afforded none of the criminal due process rights to which he is entitled when a person is charged with indirect criminal contempt. (See *Betts*, 200 Ill. App. 3d at 58-60, 558 N.E.2d at 425-26 (setting forth in detail the procedural rights of persons charged with indirect criminal contempt and holding that "[i]ndirect criminal contempt proceedings must generally conform to the same constitutionally mandated procedural re-

quirements as other criminal proceedings").) The trial court's statement at defendant's August 1991 contempt hearing that "the burden was on the defendant to show cause" provides the clearest indication that defendant was not afforded the procedural protections he was due. Furthermore, the record in this case reveals another serious procedural deficiency that this court discussed in *In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606, 616, 561 N.E.2d 394, 401, as follows:

> "[T]o avoid the surprise and confusion shown by the record in this case, we hold that due process requires that before criminal sanctions may be imposed upon a respondent as a result of indirect criminal contempt proceedings, notice must be provided to the alleged contemnor that such sanctions are being sought and might be imposed. This requirement can be met by entitling the initial pleading, 'petition for adjudication of criminal contempt.'
>
> We hold that a pleading entitled 'petition for rule to show cause' is not sufficient to provide the due process to which an alleged criminal contemnor is entitled."

Because the petition in the present case was entitled "petition for rule to show cause," under *Alltop* it could not serve as the basis for a finding that defendant was in indirect criminal contempt.

### III. The Restitution Order

Evidence presented at the July 3, 1991, hearing revealed that defendant still owed a balance of $943 in restitution. However, the September 1991 order of restitution failed to specify a particular sum defendant was to pay, instead referring to "*the balance of fines, costs, and/or restitution previously ordered* in the amount of $1,466 shall be paid within 12 months of defendant's release from the Department of Corrections." (Emphasis added.) Defendant argues that the order of restitution was defective because it did not specify the amount he must pay. We agree.

In *People v. White* (1986), 146 Ill. App. 3d 998, 1002-03, 497 N.E.2d 888, 891, this court held that the Code requires the trial court, when ordering restitution, to set forth in the sentencing order a definite amount that a defendant must pay. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(b).) Accordingly, we remand to the circuit court with directions to amend the sentencing order by setting forth the precise sum of money that defendant must pay for restitution.

Defendant also argues that the trial court erred in ordering restitution because "the court completely failed to take into consideration [defendant's] ability to pay in determining any schedule of pay-

ments." We disagree. First, the trial court set out no schedule of payments, nor was it statutorily required to do so. Second, in *People v. Lambert* (1990), 195 Ill. App. 3d 314, 334, 552 N.E.2d 300, 313, this court held that the trial court, when ordering a defendant to pay restitution, was not statutorily required to consider his ability to make those payments. This court pointed out in *Lambert* that "[t]he defendant's financial capacity is a required consideration only (1) when determining the manner of payment, and (2) if a petition to revoke restitution is filed." (*Lambert*, 195 Ill. App. 3d at 334, 552 N.E.2d at 313.) Neither of these circumstances exists in this case.

Last, defendant argues the order of restitution was defective because it failed to take into account a *pro rata* reduction in the restitution he must pay due to amounts paid by the codefendants. In support of this argument, defendant cites section 5—5—6(c) of the Code, which reads as follows:

"In cases where more than one defendant is accountable for the same criminal conduct which results in out-of-pocket expenses, losses, damages, or injuries, each defendant shall be ordered to pay restitution in the amount of the total actual out-of-pocket expenses, losses, damages, or injuries to the victim proximately caused by the conduct of all of the defendants who are legally accountable for the offense.

(1) In no event shall the victim be entitled to recover restitution in excess of the actual out-of-pocket expenses, losses, damages, or injuries, proximately caused by the conduct of all of the defendants.

(2) As between the defendants, the court may apportion the restitution which is payable in proportion to each co-defendant's culpability in the commission of the offense.

(3) In the absence of a specific order apportioning such restitution, each defendant shall bear his *pro rata* share of the restitution.

(4) As between the defendants, each defendant shall be entitled to a pro rata reduction in the total restitution required to be paid to the victim for amounts of restitution actually paid by co-defendants, and defendants who shall have paid more than their pro rata share shall be entitled to refunds to be computed by the court as additional amounts are paid by co-defendants."

Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—6(c)(1) through (c)(4).

Defendant argues that at his resentencing on September 3, 1991, when the court entered its current order of restitution, it did not consider a *pro rata* reduction in restitution for amounts actually paid by

the codefendants. Citing section 5—5—6(c)(4), defendant claims that he was entitled to a *pro rata* reduction and the trial court should have determined what amounts his codefendants had paid.

The State responds to this argument by quoting the language from section 5—5—6(c) of the Code that "each defendant shall be ordered to pay restitution *in the amount of the total actual out-of-pocket expenses, losses, damages, or injuries* to the victim proximately caused by the conduct of all of the defendants who are legally accountable for the offense." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(c).) Thus, the State argues that the trial court's September 1991 restitution order, requiring defendant to continue to pay all of the victim's losses, complied fully with section 5—5—6(c) of the Code, as quoted above.

■ The State further argues that section 5—5—6(c)(4) of the Code does not require the court at the sentencing hearing to compute the amounts that codefendants had already paid and credit those amounts against what defendant must pay in restitution. Instead, the State argues that section 5—5—6(c)(4) of the Code

> "does not envision court involvement until the defendant and co-defendants have paid more money than that required to compensate the victim. At that point, the court computes the refund to which a defendant is entitled. Defendant is not entitled to a court determination of payments by co-defendants and a pro rata reduction until the victim has been completely compensated."

We agree with both of the State's arguments and find its views consistent with the goals of restitution as recently discussed by this court in *People v. Nasser* (1991), 223 Ill. App. 3d 400, 410-11, 584 N.E.2d 1010, 1016-17.

## IV. Conclusion

For the reasons stated, we affirm the defendant's sentence and remand to the circuit court with directions to amend the sentencing order in accordance with the views expressed herein.

Affirmed and remanded with directions.

GREEN, P.J., and LUND, J., concur.