THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH V. HASPREY, Defendant-Appellant.

Fourth District   No. 4—99—0084

Opinion filed November 23, 1999.

Thomas W. Funk, of Lincoln, for appellant.

William G. Workman, State's Attorney, of Lincoln (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Defendant Keith V. Hasprey was convicted of one count of reckless driving, a Class A misdemeanor, under section 11—503 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—503 (West 1998)). The trial court sentenced him to 18 months' probation, a $1,000 fine plus costs, and $1,500 in restitution to Charles Robertson. Defendant argues the following on appeal: (1) the trial court erred by allowing the State to argue in its closing argument that, in order to convict defendant, it had to prove that defendant acted *either* willfully *or* wantonly, and not both; (2) the trial court erred in not declaring a mistrial when the jury delivered a note to the court asking, "How do you vote if you feel at this point and time both parties are at fault?"; and (3) the trial court erred in ordering defendant to pay restitution because restitution was not authorized under the Vehicle Code or the Unified Code of Corrections (Corrections Code) (730 ILCS 5/1—1—1 *et seq.* (West 1998). We affirm.

## I. BACKGROUND

On the morning of May 10, 1998, as Charles Robertson was driving to work in his Ford Escort on Fifth Street in Lincoln, Illinois, defendant attempted to pass him in his Dodge Ram pickup truck. As defendant passed, Robertson edged over the centerline, as a "reminder not to pass in town." Fifth Street is a two-lane street, and defendant had to edge almost over the curb on the other side to avoid the Escort. Defendant and Robertson agree that the two vehicles made contact during this incident, but dispute whose vehicle did the contacting. After passing Robertson, defendant pulled in front of him and stopped. Robertson also stopped. Defendant began to exit his truck, at which point Robertson backed up and took off on a side street. Robertson testified that he left the scene because he did not think there was any damage to the cars, he did not want to be late for work, defendant looked fairly angry at the time, and he felt he was in danger.

Defendant's friend, Chuck Taylor, was driving not far behind defendant because he and defendant had been on their way to play golf. Taylor stopped behind defendant on Fifth Street and asked what happened. Defendant told Taylor that Robertson had just hit him. Defendant had not obtained Robertson's license plate number or taken a good look at Robertson at that point. Taylor suggested, "[L]et's go get him."

Defendant and Taylor decided to pursue Robertson. Shortly thereafter, defendant spotted Robertson's Escort on a nearby side street. Defendant pursued Robertson on the side street, while Taylor took Fifth Street to attempt to cut Robertson off, in the event he emerged there. Defendant eventually caught up to Robertson, pulled beside him and motioned for him to pull over. Robertson did not pull over. Defendant pulled in front of Robertson and stopped as he did previously. Robertson again backed up his Escort and pulled away, heading toward Lincoln Parkway. Defendant again failed to obtain Robertson's license plate number or to take a good look at Robertson. Defendant continued the pursuit.

Defendant caught up to Robertson on Lincoln Parkway, a four-lane road, pulled beside him, and again motioned for him to pull over. Both vehicles were headed southbound in the southbound lanes at this point. During this pursuit, Robertson swerved behind defendant a couple of times and drove through the grassy center median of Lincoln Parkway into the northbound lanes, still heading southbound, attempting to escape from defendant. Defendant continued to pursue him. Defendant was able to catch up, and he again pulled in front of Robertson and stopped. By that time, Taylor had caught up to them and he pulled behind Robertson to "box him in." Defendant had maneuvered his truck so that it was perpendicular to Lincoln Parkway, straddling both lanes. Robertson began to back up, attempting to flee, and defendant began backing up simultaneously. Robertson testified that defendant slammed his truck into Robertson's Escort, pushed it sideways about three to four feet, and caused it to spin around so that Robertson's car was now facing Taylor's truck. Robertson looked at Taylor and raised his hands, which Taylor interpreted as Robertson asking, "What is going on?" Defendant testified that he did not intend to hit the Escort and that, in fact, it was the Escort that hit his truck. Taylor testified that because defendant's truck was three times the size of Robertson's Escort, the Escort was crushed from the collision. Robertson was afraid and scared "out of [his] wits" during the course of these events. Officer David Sieloff, who prepared the police report, testified that when Robertson came to the police station, he seemed "fearful of the other driver."

Immediately after the collision on Lincoln Parkway, Robertson again swerved over the center median into the northbound lanes and pulled off Lincoln Parkway onto a road leading to the Illinois Department of Corrections. Robertson called the police from there. Defendant and Taylor aborted their pursuit, proceeded to the golf course, and called the police from there.

Robertson was charged with reckless driving for edging over the centerline while defendant was attempting to pass him. Robertson pleaded guilty to the charge. Defendant was charged with two counts of reckless driving, but one charge was dismissed on the State's own motion before the trial. The two-day trial began on November 17, 1998.

At the beginning of the second day of trial, the court received a written question from the jury asking, "How do you vote if you feel at this point and time both parties are at fault?" After agreeing initially that an admonition to the jury not to discuss the case until all of the evidence was presented would be a sufficient response, defendant's counsel asked that a paragraph be added to the response also instructing the jury that the State was required to prove more than fault and that this case was not about fault. Defendant feared that the jury misunderstood the law. The State objected, arguing that instructing the jury on the law before all of the evidence was concluded would only compound the problem. During the discussion, defendant's counsel stated at various times that he would move for a mistrial if he was not satisfied with the court's response to the jury. He stated, "I'm going to move for a mistrial. I really don't honestly think this problem can be cured unless the jury is told right now that this case is not about fault. He also said, "Unless [the jury is] corrected *** immediately[,] I don't see how this can be anything other than a mistrial," and that he was "moving for a mistrial unless the court will instruct that the issue in this case is not fault." After considerable discussion, the trial judge suggested that the problem could be cured by adding a sentence to the bottom of the court's written response that, "This case is not about fault. It is about reckless driving." The State's Attorney agreed, as did defendant's counsel, stating: "I think we would agree to that sentence." Defendant's counsel also asked that the word "fault" be placed in quotation marks, and the trial judge agreed. We have reviewed a copy of the written response to the jury that was included in the record, and it conforms with these stipulations. Finally, defendant's counsel confirmed that the response would be sent to the jury and read. The trial judge concluded the discussion by indicating that he was going to "tell [the jury] not to discuss among themselves, and that [he would] instruct as to the law, and *** [that they should]

wait until [they] hear everything before [they] discuss it." Presumably, the trial judge meant he would give this oral admonition to the jury in addition to sending back the written response.

The trial judge then addressed the jury, stating:

"Each case is individual, each case is different, and we deliberate a verdict as jurors after all the evidence has been presented and after you're instructed as to what the law is.

In this particular case[,] it is not proper to be discussing the case before all the evidence is in and before the instructions. *** [Y]ou have to wait until you have heard all the evidence and [been] instructed as to the law before you make any determination on guilt or innocence."

The court then asked if defendant was ready to proceed. Defendant's counsel responded in the affirmative and proceeded by calling defendant as a witness. Defendant's counsel did not object to the trial judge's admonition to the jury or make any motion for mistrial.

At the close of all of the evidence, the record indicates that defendant's counsel made a motion *in limine*, off the record, asking that the court prohibit the State from arguing in its closing argument that it could establish the offense of reckless driving under section 11—503 of the Vehicle Code (625 ILCS 5/11—503 (West 1998)) by proving that defendant acted either willfully *or* wantonly. The parties' arguments with respect to defendant's motion were made on the record. Defendant argued that under *People v. Paarlberg*, 243 Ill. App. 3d 731, 612 N.E.2d 106 (1993), a showing of both willfulness and wantonness was required. In *Paarlberg*, the court discussed types of reckless driving under section 11—503 of the Vehicle Code. Although the *Paarlberg* court stated that reckless driving requires proof of a willful *or* wanton mental state, the court proceeded to define three categories of reckless driving that each required willful *and* wanton behavior. *Paarlberg*, 243 Ill. App. 3d at 735-36, 612 N.E.2d at 110-11.

After considering *Paarlberg*, the trial court denied defendant's motion *in limine*, noting that the plain language of section 11—503 defines reckless driving as driving with a willful *or* wanton disregard for the safety of others.

The parties proceeded with their closing arguments. The State argued that it was required to "show that the defendant was either wilful or wanton in his disregard," but that the evidence showed that defendant was both. The State asked the jury "to find that the evidence showed that both [mental states] were present here." At the conclusion of the arguments, the court gave the jury the instructions tendered by the parties. Included was a jury instruction given pursuant to Illinois Pattern Jury Instructions, Criminal, No. 23.31, at 258

(3d ed. 1992) (hereinafter IPI Criminal 3d No. 23.31), which states: "A person commits the offense of reckless driving when he drives a vehicle with a wilful *or* wanton disregard for the safety of persons or property." (Emphasis added.) The record indicates that this instruction was given with no objection. The jury then deliberated and found defendant guilty of the offense of reckless driving.

The sentencing hearing was held on December 31, 1998. At the hearing, the court was asked to also address a "Petition to Revoke Conditional Discharge or in the Alternative to Hold the Defendant in Contempt" (petition to revoke), which was filed by the State in case No. 97—CM—317, in which defendant was convicted of attempted unlawful use of weapons on July 28, 1997. Defendant pleaded guilty and, as part of his sentence, he was placed on conditional discharge for two years. One of the conditions of his discharge was that he not violate a criminal statute of any jurisdiction. The State filed the petition to revoke based upon its belief that, as a result of his reckless driving, defendant had violated his conditional discharge.

The court heard arguments with respect to the appropriate sentence under both convictions. With respect to the reckless driving conviction, the State specifically addressed the issue of whether the court was authorized to order restitution under the Vehicle Code. Citing *People v. Nasser*, 223 Ill. App. 3d 400, 584 N.E.2d 1010 (1991), and *People v. Lowe*, 153 Ill. 2d 195, 606 N.E.2d 1167 (1992), the State argued that the legislature intended for courts to have broad authority to order restitution for all offenses. The State also cited *People v. Fox*, 298 Ill. App. 3d 926, 700 N.E.2d 152 (1998), in which the First District Appellate Court held that courts are not authorized to order restitution for offenses under the Vehicle Code. The State argued that the *Fox* decision was in conflict with the legislative intent underlying section 5—5—6 of the Corrections Code and urged the court to reject it. Defendant urged the court to follow *Fox*, arguing that the plain language of the restitution statute did not allow courts to order restitution for any offenses except those under the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/1—1 *et seq.* (West 1998)).

Upon the conclusion of the arguments, the court sentenced defendant to 18 months' probation, a $1,000 fine plus costs, and $1,500 in restitution for the reckless driving conviction. With respect to the petition to revoke, the court revoked the conditional discharge and sentenced defendant to two weekends in jail and costs.

This appeal followed.

## II. ANALYSIS

### A. State's Closing Argument

Defendant first argues that the trial court erred in allowing the

State to argue in closing that reckless driving could be proved by a showing of either willful *or* wanton conduct. Defendant asks us to reverse defendant's conviction for reckless driving and remand for further hearing and, also, to reverse the trial court's finding that defendant violated the order of conditional discharge.

■ Before reaching the merits of defendant's argument, we must address the State's contention that defendant forfeited his right to raise this argument because he agreed to the jury instruction given pursuant to IPI Criminal 3d No. 23.31, which defines reckless driving as driving a vehicle with a "wilful *or* wanton disregard for the safety of persons or property." (Emphasis added.) Defendant contends that he is not objecting to the language of the jury instruction. Rather, he argues that the State's closing argument was prejudicial because it misstated the law. Because defendant properly raised his objection to the State's closing argument in his posttrial motion, he argues that he did not forfeit his right to object to it on appeal. We agree and will address the merits of defendant's argument.

Defendant argues that despite the plain language of section 11—503 of the Vehicle Code, that a person commits the offense of reckless driving when he "drives any vehicle with a willful *or* wanton disregard for the safety of persons or property" (emphasis added) (625 ILCS 5/11—503 (West 1998)), the legislature actually intended to require proof of both a willful *and* wanton disregard as elements of reckless driving. He contends that the legislature intended the term "reckless," as used in section 11—503 of the Vehicle Code, to have the definition adopted in section 4—6 of the Criminal Code (720 ILCS 5/4—6 (West 1998)), which includes elements of both willfulness and wantonness. Defendant points to case law in which courts looked for both willful and wanton conduct in determining whether the offense of reckless driving was committed under section 11—503, and contends that such case law is an indication that these courts agree the legislature intended to require both willful and wanton conduct as elements of reckless driving. See, *e.g.*, *Paarlberg*, 243 Ill. App. 3d 731, 612 N.E.2d 106; *People v. Johnson*, 30 Ill. App. 3d 974, 333 N.E.2d 258 (1975). Accordingly, defendant argues, the State misstated the law in its closing argument by suggesting to the jury that it could show either willful *or* wanton conduct, and not both.

■ It is well established that prosecutors are afforded wide latitude in closing arguments. *People v. Macri*, 185 Ill. 2d 1, 48, 705 N.E.2d 772, 794 (1998).

The Supreme Court of Illinois has held:

> "[B]ecause a cold record cannot convey the actual effect of an attorney's comments, appellate courts accept a trial judge's judgment

(unless it is a clear abuse of discretion) that a prosecutor has not exceeded that wide latitude by making a prejudicial comment." *People v. Bean*, 137 Ill. 2d 65, 126, 560 N.E.2d 258, 286 (1990). Also, the supreme court has said:

"Improper remarks warrant reversal only where they result in substantial prejudice to the defendant, considering the content and context of the language, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." *People v. Kliner*, 185 Ill. 2d 81, 151-52, 705 N.E.2d 850, 886 (1998).

Our determination involves a two-step process. First, we must decide if the State's remarks indeed misstated the law. If we find that they did, we must then determine if the remarks were sufficiently prejudicial to warrant reversal. However, if we find they did not misstate the law, we need not reach the substantial prejudice inquiry.

■ Where the interpretation of a statute is involved, the standard of review on appeal is *de novo*. *People v. Robinson*, 172 Ill. 2d 452, 457, 667 N.E.2d 1305, 1307 (1996). The primary rule of statutory interpretation and construction is to ascertain and effectuate the true meaning and intent of the legislature. If the language of the statute is plain, clear, and unambiguous, it must be given effect and a court need not resort to other aids for construction. *Department of Central Management Services v. Illinois State Labor Relations Board*, 249 Ill. App. 3d 740, 745, 619 N.E.2d 239, 243 (1993).

■ We find that the language of section 11—503 of the Vehicle Code is plain, clear, and unambiguous, and it is unnecessary to resort to other aids of construction such as legislative history. Here, the language of section 11—503 clearly defines reckless driving as involving either willful *or* wanton conduct. Accordingly, the State did not misstate the law in suggesting that it could establish either willful or wanton behavior. Because we do not find that the State misstated the law, we need not reach the substantial prejudice inquiry.

However, we note that even if the legislature did indeed intend to specifically require proof of both willful and wanton behavior under section 11—503 of the Vehicle Code, as defendant contends, no substantial prejudice occurred as a result of the State's remarks. Our review of the record shows overwhelming evidence that defendant acted both willfully and wantonly. Indeed, defendant does not challenge the sufficiency of the evidence or contend that he did not act both willfully and wantonly.

Because we find that the State correctly stated the law, we cannot find any prejudice to the defendant and find no basis for reversal or for further hearing.

## B. Declaration of Mistrial

■ Defendant next argues that the trial court erred by failing to

declare a mistrial when the jury asked the court, "How do you vote if you feel at this point and time both parties are at fault?" Defendant requests that we reverse his conviction and grant a new trial. The State again contends that defendant has forfeited his right to make this argument because (1) defendant acquiesced at the trial to the court's response to the jury and (2) defendant's argument in his post-trial motion was different.

We note, as a threshold matter, that it is unclear whether defendant argues that the trial court improperly denied his motion for a mistrial or that the trial court should have declared a mistrial *sua sponte*. In any event, we have reviewed the record and find that although defendant, in several instances, *threatened* to move for a mistrial unless the court instructed the jury that this case was not about fault, no motion was ever actually presented. In fact, defendant explicitly expressed satisfaction with the court's written response to the jury and neither requested that the court also orally admonish the jury that this case was not about fault nor objected once the court gave its oral admonition. Because defendant only threatened to move for mistrial and never actually presented such motion, and because he clearly acquiesced to the court's response to the jury's question, we agree with the State that defendant forfeited his right to argue that the trial court erred in not declaring a mistrial. See *People v. Westpfahl*, 295 Ill. App. 3d 327, 333, 692 N.E.2d 831, 836 (1998) (where no motion for mistrial was ever presented, argument that trial court failed to declare mistrial was forfeited).

We do note that a trial court must "use 'sound discretion' to assure that manifest necessity exists to declare *sua sponte* a mistrial." *People v. Pondexter*, 214 Ill. App. 3d 79, 84, 573 N.E.2d 339, 343 (1991). The trial court must consider all reasonable alternatives to a declaration of mistrial. *Pondexter*, 214 Ill. App. 3d at 84, 573 N.E.2d at 343. We find that no manifest necessity existed here, because any prejudice that may have resulted from the jury's question was corrected by the court's written response and several oral admonitions to the jurors that they should refrain from discussing the case until all of the evidence is in and they are instructed as to the law.

Having found that defendant forfeited the issue by his acquiescence to the court's actions, we need not address whether defendant also forfeited the issue by raising a different argument in his posttrial motion.

## C. Restitution

■ Defendant's last argument is that the trial court erred in ordering defendant to pay restitution to Robertson because the court was

not authorized to do so under the Vehicle Code or the Corrections Code. Defendant asks us to vacate and set aside the trial court's order. The determination and imposition of a sentence are matters involving considerable judicial discretion, and a trial court's sentence will not be disturbed absent an abuse of discretion. *People v. Younger*, 112 Ill. 2d 422, 427, 494 N.E.2d 145, 147 (1986), quoting *People v. La Pointe*, 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348 (1981).

Section 5—5—3 of the Corrections Code (730 ILCS 5/5—5—3 (West 1998)) sets forth the appropriate dispositions for misdemeanors. One such appropriate disposition under section 5—5—3(b)(7) (730 ILCS 5/5—5—3(b)(7) (West 1998)) is an order directing the offender to make restitution to the victim under section 5—5—6 of the Corrections Code (730 ILCS 5/5—5—6 (West 1998)). Prior to December 31, 1996, section 5—5—6 of the Corrections Code provided, in relevant part, as follows:

"In all convictions for offenses in violation of the [Criminal Code] committed against any person 65 years of age or older in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant ***, the court shall order restitution as provided in this [s]ection. In *all other cases*[,] the court shall[,] at the sentence hearing[,] determine whether restitution is an appropriate sentence ***." (Emphasis added.) 730 ILCS 5/5—5—6 (West 1994).

The legislature passed Public Act 89—689 (Pub. Act 89—689, § 100, eff. December 31, 1996 (1996 Ill. Laws 3775, 3795) (amending 730 ILCS 5/5—5—6 (West Supp. 1995)), which amended section 5—5—6 of the Corrections Code to read as follows:

"In all convictions for offenses in violation of the [Criminal Code] in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant, the court shall order restitution as provided in this [s]ection." 730 ILCS 5/5—5—6 (West 1998).

Public Act 89—689 broadened section 5—5—6 of the Corrections Code to allow restitution for *any* person receiving an injury, not just persons 65 or older. Public Act 89—689 also deleted the second sentence of section 5—5—6, which provided for the method of determining restitution in cases involving offenses other than those committed under the Criminal Code.

Defendant argues that because the legislature deleted the second sentence of section 5—5—6 of the Corrections Code, restitution is now authorized only for offenses under the Criminal Code. This amended version of section 5—5—6 was in effect at the time of defendant's conviction and sentencing. Because defendant was convicted under the

Vehicle Code, not the Criminal Code, defendant argues that the trial court was not authorized to order restitution under the Corrections Code and that no similar restitution statute exists under the Vehicle Code. Defendant cites *Fox*, 298 Ill. App. 3d 926, 700 N.E.2d 152, as authority for his position. The first district in *Fox* held that the plain language of section 5—5—6, as amended, expressly limits restitution only to convictions for offenses contained in the Criminal Code. The *Fox* court held further that it would be improperly engaging in judicial lawmaking to hold otherwise. *Fox*, 298 Ill. App. 3d at 930-31, 700 N.E.2d at 155.

■ We agree with defendant that *Fox* supports his position but, because we do not agree with the analysis in *Fox*, we reject his argument and affirm the trial court's order of restitution. In *Nasser*, 223 Ill. App. 3d at 410, 584 N.E.2d at 1016, we also interpreted section 5—5—6 of the Corrections Code, albeit for a different reason. The question in *Nasser* was whether section 5—5—6(b) limited restitution to victims of violent crimes, as opposed to nonviolent crimes. We held that section 5—5—6(b) did not limit restitution to victims of violent crimes. We stated the legislative intent underlying section 5—5—6(b) to be as follows: "(1) to make victims whole for *any* injury received at the hands of the convicted criminal; and (2) to make criminals pay *all* of the costs which arise as a result of injuries the victim suffered." (Emphasis in original.) *Nasser*, 223 Ill. App. 3d at 410, 584 N.E.2d at 1016. We felt that limiting restitution to cases of violent crimes was in conflict with this intent. In support of our holding, we also noted that the legislature had added a new subsection (g) to section 5—5—6 (added by Public Act 85—1194 (Pub. Act 85—1194, eff. August 19, 1988 (1988 Ill. Laws 1495, 1505-06))), which made restitution mandatory for certain offenses that were not violent crimes. *Nasser*, 223 Ill. App. 3d at 408, 584 N.E.2d at 1015.

Our holding in *Nasser* was affirmed by the supreme court in *Lowe*, 153 Ill. 2d 195, 606 N.E.2d 1167. The court stated that, in interpreting a statute, a court "must presume that, in enacting legislation, the legislature did not intend an absurd result." *Lowe*, 153 Ill. 2d at 201, 606 N.E.2d at 1171. The court declined to read section 5—5—6(b) of the Corrections Code as authorizing restitution only for victims of violent crime. In so doing, the court noted that statements of the Illinois House of Representatives considering House Bill 67, enacted as Public Act 83—1061 (Pub. Act 83—1061, eff. July 1, 1984 (1983 Ill. Laws 7226)), which added subsection (b) to section 5—5—6, showed a clear intent to expand the scope of the restitution statute. *Lowe*, 153 Ill. 2d at 202-03, 606 N.E.2d at 1171-72. Therefore, the court concluded that construing section 5—5—6(b) to limit restitution to victims of violent

crime "would be absurd, as it is contradictory to expand and simultaneously to narrow the applicability of a statute." *Lowe*, 153 Ill. 2d at 203, 606 N.E.2d at 1171.

In the instant case, we are presented with a similar situation. The legislative intent in passing Public Act 89—689 was clearly to broaden section 5—5—6 of the Corrections Code to authorize restitution for *all* victims of crimes committed under the Criminal Code, not just victims ages 65 or older. It would be contradictory to this intent to hold that the legislature simultaneously intended to narrow section 5—5—6 to limit restitution only for offenses committed under the Criminal Code. Such a holding would bar the trial courts in the future from ordering restitution for the countless number of offenses not listed under the Criminal Code, such as reckless driving and other crimes under the Vehicle Code, all of the offenses against persons codified from the Communications Consumer Privacy Act through the Wrongs to Children Act (720 ILCS 110/1 through 3 (West 1998) through 720 ILCS 150/0.01 *et seq.* (West 1998)), all of the offenses against property codified from the Aircraft Crash Parts Act through the Wild Plant Conservation Act (720 ILCS 205/0.01 *et seq.* (West 1998) through 720 ILCS 400/0.01 *et seq.* (West 1998)), and all of the offenses against the public codified from the Abandoned Refrigerator Act through the Use of Intoxicating Compounds Act (720 ILCS 505/0.01 *et seq.* (West 1998) through 720 ILCS 690/0.01 *et seq.* (West 1998)), to name only a few. We find it extremely unlikely that the legislature intended to exclude victims of offenses committed under these and countless other statutes from the benefit of restitution, and it would be absurd, at minimum, to hold as such. We conclude that if the legislature indeed intended to make such a sweeping and comprehensive change in the policy of restitution, it would have made such change clear by codifying an affirmative statement to that effect.

We choose to adhere to the view we expressed in *Nasser*, that the legislative intent underlying section 5—5—6 of the Corrections Code imposes a duty upon trial courts to order restitution, to the extent possible, to benefit victims so they can avoid the bother, expense, and delay often present in the civil justice system. *Nasser*, 223 Ill. App. 3d at 411, 584 N.E.2d at 1017. Accordingly, we respectfully decline to follow the decision of our colleagues in the first district in *Fox* and, not having found any abuse of discretion, affirm the restitution order of the trial court.

## III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.