5 June 2000

No. 2--98--1352 

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit

OF ILLINOIS, ) Court of Lake County.

)

Plaintiff-Appellee, ) 

)

v. ) No. 94--CF--1628

)

HECTOR RODRIGUEZ, ) Honorable

) Christopher C. Starck,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

In 1994 defendant, Hector Rodriguez, was convicted of one count of first-degree murder (720 ILCS 5/9--1(a)(1) (West 1994)) and one count of aggravated battery with a firearm (720 ILCS 5/12--

4.2(a)(1) (West 1994)) and sentenced to concurrent 28-year terms of incarceration.  On appeal this court reversed and held, 
inter alia
, that the trial court improperly granted the State's motion to join his case with a codefendant's.  See 
People v. Rodriguez
, 289 Ill. App. 3d 223, 237 (1997) (
Rodriguez I
).  This court also held that the trial court properly admitted a tape recording that defendant alleged was made in violation of the eavesdropping provisions of section 14--2(a) of the Criminal Code of 1961 (the Code) (720 ILCS 5/14--2(a) (West 1994)).  
Rodriguez I
, 289 Ill. App. 3d at 238.  On remand, defendant was retried and convicted of first-degree murder (720 ILCS 5/9--1(a)(2) (West 1994)) and aggravated battery with a firearm.  The trial court sentenced defendant to 28 years' incarceration for the murder charge and a consecutive term of 6 years' incarceration for the aggravated battery charge.  Defendant's posttrial motions were denied, and defendant timely appeals.  On appeal defendant contends that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred when it admitted an audiotape of a telephone conversation made without defendant's consent; (3) the trial court erred when it ruled that defendant could not call his mother to impeach statements made in the audiotape; (4) the trial court invaded the jury's role as fact finder when it answered a jury question regarding the interpretation of a transcript of defendant's first trial; (5) defendant's 34-year sentence was excessive when compared to his original 28-year sentence because the trial court punished defendant for successfully prosecuting his first appeal; and (6) the trial court erred when it failed to calculate and include in the mittimus credit for time served.  We affirm in part, vacate in part, and remand for a determination of defendant's credit for time served.

In accordance with the criteria of Supreme Court Rule 23(a) (166 Ill. 2d R. 23(a)), we have determined that only defendant's second issue, admissibility of the audiotape, is of precedential significance.  Accordingly, we have ordered that the remaining portions of this disposition be unpublished.

BACKGROUND

The procedural history of and the evidence presented at defendant's first trial are set out in this court's previous opinion.  See 
Rodriguez I
, 289 Ill. App. 3d 223.  The following supplemental facts are provided to address the issues relevant to this appeal.

Before defendant's second trial, he moved to suppress a tape recording made by Arlene Carrion of a telephone conversation she had with defendant.  The State responded that the issue had been addressed in the direct appeal of defendant's first conviction, in which this court held that the tape was admissible.  Defendant argued that the eavesdropping statute had been amended and that the amended statute should be retroactively applied to bar the admission of the recording.  The trial court held that the earlier appellate decision was the "law of the case" and ruled that the tape would be admissible.

[Nonpublishable material removed under Supreme Court Rule 23.]

At trial, Arlene Carrion testified that she knew both Freddie Zuniga and defendant.  On June 5 or June 6, 1994, she learned that Zuniga had been arrested for murder.  Carrion spoke with defendant at a Puerto Rican Society meeting hall after learning of Zuniga’s arrest but could not recall the exact date.  Carrion testified she could not recall the substance of the conversation.  Carrion also testified she could not recall what defendant said about the shooting.  Carrion admitted testifying under oath in the earlier proceeding.  The State asked whether Carrion recalled the following exchange:

"Q.  What did he tell you about the shooting?

 A.  I had asked him if he did it and he said yes he did."

Carrion denied recalling whether she had given the answer.  The State then asked if Carrion recalled the following exchange.

"Q.  What, if anything, did he tell you about whether Freddie had done it?

A.  He admitted to me that he did not do it.

Q.  That who did not do it?

A.  That Freddie did not do it."

Carrion denied recalling the exchange.

Carrion testified that she also spoke with defendant on the telephone about the shooting.  Carrion testified that she made a recording of the conversation using her answering machine.  However, Carrion denied recalling the content of the conversation.   The audiotape was played for the jury; the transcript of the audiotape included in the record contains the following exchange.

"[DEFENDANT]:  Lake County, they want me to confess, I told the guard I'd rather rot in jail.

[CARRION]:  Who wants you to confess?

[DEFENDANT]:  Those, those, the state, cause they said they think I know more.

[CARRION]:  But they don't got no proof you did that, you did it right?

[DEFENDANT]:  They don't know who did it.  Freddie said he did it, to get me off, all I'm getting charged with is for carrying the gun, and for hiding it.  [T]hat's why I'm going to try to get charged *** as a Juvy, a Juvenile.

[CARRION]:  Yeah but that's f----- up then because he's going to get charged for murder and s--- and he didn't even do it.

[DEFENDANT]:  I know."

The tape also included the following:

"[CARRION]:  They don't know that you did it right?

[DEFENDANT]:  Who don't?

[CARRION]:  Your parents.

[DEFENDANT]:  Yeah, they know.

[CARRION]:  They know?

[DEFENDANT]:  Yeah."

After hearing the tape, Carrion admitted that it was her voice on the recording.  She also admitted that it was defendant's voice on the recording.  However, Carrion testified that she could not remember the conversation and could not determine whether the tape had been altered.  Carrion testified that at the time the conversation was recorded she was using marijuana as often as three times a day and was an alcoholic.  Carrion testified that she recalled making the recording and that the tape contained her voice and defendant's voice.  Carrion testified that, although she could not recall the details of the conversation, she could not deny that the tape was an accurate recording.  Carrion also testified that she could not recall whether the police asked her to make the recording.  Carrion admitted that she reviewed the tape with an investigator from the State's Attorney's office.  She admitted that, after listening to the tape, she reviewed a transcript of the tape with an investigator.  Carrion also admitted that after reviewing the transcript she made several corrections to the transcript and initialed the corrections.

On cross-examination Carrion admitted that, at the time of the shooting, she was a close friend of both Carlos Arroyo and Freddie Zuniga.  Carrion also testified that the State's Attorney's office had threatened to charge her with perjury if she did not testify at the trial.

[Nonpublishable material removed under Supreme Court Rule 23.]

Defendant testified that he knew Arlene Carrion.  Defendant testified that he had listened to the tape of his conversation with Carrion when it was played in the courtroom.  Defendant testified that he recalled the conversation but that he did not know that he was being recorded at the time.  Defendant testified that he did not have any other conversation with Carrion in which he admitted shooting from the van.  Defendant also testified that he did not have any other conversations with Carrion in which he stated that Freddie was not the shooter.  Defendant testified that, when he spoke to Carrion, he was playing around and goofing off.  Defendant testified that when he told Carrion that his parents knew that he "did it," he was referring to hiding the gun.  Defendant testified that when he said he knew that Freddie did not do it, he meant that he couldn't say whether Freddie was the shooter because he did not see the shooter.

On cross-examination defendant admitted that it was his voice on the tape.  Defendant admitted that, when Carrion asked "So what did Freddie say about this s---," he responded "I don't know.  He's the one who took the blame."  Defendant testified that he used the phrase "took the blame" because he didn't see who did it and did not want to say Freddie did it.  Defendant denied that Freddie took the blame for him.  Defendant admitted that he said "Freddie said he did it to get me off."  Defendant testified that, when he said that, he meant that Freddie was trying to get him off for hiding the gun.  Defendant admitted that, when Carrion said "Yeah but that's  f----- up then because [Freddie's] going to get charged for murder and s---, and he didn't even do it," he answered "I know."  Defendant testified that when he said that he meant that he didn't see who did it.

[Nonpublishable material removed under Supreme Court Rule 23.]

The jury found defendant not guilty of first-degree murder based on an intent to kill Arturo Mendez, guilty of first-degree murder based on a strong probability of the death of or great bodily harm to Arturo Mendez, and guilty of aggravated battery with a firearm.  The trial court entered judgment on the jury's verdicts and set the matter for sentencing.

Defendant subsequently moved for a judgment 
n.o.v.
 or, in the alternative, a new trial.  The trial court denied defendant's posttrial motions and continued the matter for sentencing.  At the sentencing hearing, the State argued that the defendant was subject to mandatory consecutive sentences and urged the trial court to sentence defendant to 28 years' incarceration for the murder conviction and 15 years' incarceration for the aggravated battery conviction.  Defendant noted that following his first trial he was sentenced to two concurrent terms of 28 years' incarceration.  Defendant argued that imposing an aggregate sentence in excess of 28 years would unfairly punish him for exercising his constitutional right to appeal.

The trial court first noted that defendant's conduct in the Department of Corrections indicated that he had attempted to do some good things and would not justify an increase in the 28-year term given for the murder conviction following the first trial.  However, the trial court also noted that it did not believe the original 28-year term was excessive and stated that it considered the original sentence to be lenient, but appropriately so.  The trial court then discussed the mandatory nature of the consecutive sentence and stated, "This is not a trial tax or intended to be a trial tax or intended to be an appeal tax, but that's the position this defendant is faced with now."  The trial court then sentenced defendant to a consecutive term of six years' incarceration for the aggravated battery conviction.  The trial court denied defendant's subsequent motion to reconsider, and defendant timely appeals.

ANALYSIS

[Nonpublishable material removed under Supreme Court Rule 23.]

Eavesdropping Statute

Defendant contends that the trial court erred when it admitted an audiotape recording of his conversation with Carrion.  Defendant argues that the tape was inadmissible because it was obtained in violation of the amended version of section 14--1(a) of the Code (720 ILCS 5/14--1(a) (West 1998)).  Defendant alternatively argues that the State failed to lay a proper foundation for the admission of the tape.

In defendant's first appeal, this court ruled that the tape had properly been admitted because it was not made in violation of section 14--1(a) as that section had been interpreted by our supreme court in 
People v. Beardsley
, 115 Ill. 2d 47 (1986).  See 
Rodriguez I
, 289 Ill. App. 3d at 238.  In 
Beardsley
, the supreme court held that the eavesdropping statute did not prohibit the recording of a conversation by a party to that conversation because doing so did not invade an expectation of privacy.  
Beardsley
, 115 Ill. 2d  at 55.  However, after 
Beardsley
 was decided, the legislature amended section 14--1 and defined a conversation as "any oral communication *** regardless of whether one or more of the participants intended their communication to be of a private nature under circumstances justifying that expectation."  720 ILCS 5/14--1(d) (West 1994) (amended by Pub. Act 88--677 §20, eff. December 15, 1994).

Defendant's arguments raise an initial question regarding the proper application of the law-of-the-case doctrine.  The trial court in the present case held that this court's decision in 
Rodriguez I
 was the "law of the case" and ruled that the audiotape recording was admissible.  Under the law-of-the-case doctrine, a rule established as controlling in a particular case will continue to be the law of the case, as long as the facts remain the same.  
People v. Patterson
, 154 Ill. 2d 414, 468 (1992).  The related doctrine of collateral estoppel is sometimes used to reach the same result.  See 
People v. Enis
, 163 Ill. 2d 367, 386 (1994).  "Where a defendant's conviction has been reversed for trial error, and the cause is remanded for a new trial, the doctrine of collateral estoppel bars the relitigation of a pretrial ruling, such as a motion to suppress, unless the defendant offers additional evidence or there are other special circumstances."  
Enis
, 163 Ill. 2d at 386.  However, the law-of-the-case doctrine is an expression of the practice of courts to refuse to reopen what has been decided; it is not a limit on their power.  
Patterson
, 154 Ill. 2d at 468-69.

In the present case, defendant cites the modification of the eavesdropping provisions of section 14--1 as a special circumstance that supports the reconsideration of this court's ruling in 
Rodriguez I
.  Although defendant describes this amendment as a special circumstance, we note that the statute was amended prior to this court's decision in 
Rodriguez I
, and, although the amendment was not mentioned in the opinion, we will presume that that panel of this court was aware of the amendment.  Accordingly, the trial court acted in conformance with the law-of-the-case doctrine when it held that 
Rodriguez I
 was controlling.  However, the law-of-the-

case doctrine alone is insufficient to resolve this issue because 
Rodriguez I
 failed to address the precise issue before us, 
i.e.
, whether the admissibility of a recording should be judged against the standards of section 14--1 as they existed at the time the recording was made or as they exist at the time the evidence is presented to the court.

Defendant argues that the admissibility of the tape-recorded conversation should be determined by the law as it is in effect at the time the tape is sought to be admitted because the State cannot acquire a vested interest in the admission of a particular piece of evidence.  The State responds that the 
ex post facto
 clause prevents the legislature from criminalizing acts that were legal when taken.  The State also argues that this issue was resolved by 
People v. Siwek
, 284 Ill. App. 3d 7 (1996).  In 
Siwek
, the reviewing court held that the version of the eavesdropping statute in effect at the time of the alleged eavesdropping is applicable.  
Siwek
, 284 Ill. App. 3d at 14.  However, 
Siwek
 does not explain the reasoning underlying its conclusion and considered neither the vested rights nor 
ex post facto
 arguments raised by the parties.  See 
Siwek
, 284 Ill. App. 3d at 14.  Therefore, we do not find that 
Siwek
 conclusively settles this issue, and we will examine the parties' arguments further.  See 
Mueller v. Board of Fire & Police Commissioners
, 267 Ill. App. 3d 726, 732 (1994) ("The doctrine of 
stare decisis
 is not an inflexible rule requiring a reviewing court to blindly follow its own precedents").

Defendant's arguments highlight the evidentiary applications of the eavesdropping statute.  Ordinarily, the legislature is free to amend the law and apply that amendment to antecedent events unless that amendment impairs a vested right, creates a new obligation, or attaches a new disability to a transaction already past.  
First of America Trust Co. v. Armstead
, 171 Ill. 2d 282, 290 (1996).  Accordingly, a reviewing court should apply the law as it exists at the time of appeal unless doing so affects a vested right.  
First of America
, 171 Ill. 2d at 290.  No one can acquire a vested right in a particular rule of evidence, and a statutory amendment that modifies a restriction on the admissibility of evidence does not offend basic notions of due process as long as it leaves the parties in a criminal or civil trial with a fair opportunity to present their case.  See 
D.C. v. S.A.
, 178 Ill. 2d 551, 567 (1997); 
People v. Kotecki
, 279 Ill. App. 3d 1006, 1012-13 (1996).  Therefore, if we view the eavesdropping statute merely as an evidentiary rule, we should apply the amended version on appeal because doing so does not affect a vested right.

The State's argument, on the other hand, focuses on the criminal aspects of the eavesdropping statute.  The State argues that, under 
Beardsley
, Carrion's action was not a crime and retroactive application of the amendment would therefore violate the prohibition on 
ex post facto
 legislation.  See 
People v. Witt
, 227 Ill. App. 3d 936, 942 (1992).  "For a law to be applied 
ex post facto
, the statute in question must apply to events occurring before its enactment 
and
 it must furthermore disadvantage the defendant affected by it."  (Emphasis in original.)  
Witt
, 227 Ill. App. 3d at 941.  We note that the State itself would not be subject to the disadvantage of criminal prosecution if we rule that the amended eavesdropping applies to the tape recording made by Carrion.  However, the retroactive application of the amendment would disadvantage Carrion because she would be criminally liable for an act that was legal when she performed it.  Therefore the application of the amended act against Carrion in a criminal prosecution would  constitute an unconstitutional 
ex post facto
 law.  See 
Witt
, 227 Ill. App. 3d at 942.

The juxtaposition of these competing arguments reveals a conflict in the eavesdropping statute.  We are reluctant to adopt an interpretation of the eavesdropping statute that requires the courts to declare an act an illegal violation of the statute when ruling on the admissibility of evidence and simultaneously declare the same act legal if called upon to consider criminal liability for an alleged eavesdropper.  See 
People v. Hasprey
, 308 Ill. App. 3d 841, 853 (1999) (holding that it would be absurd and contradictory to interpret a statutory amendment as simultaneously narrowing and expanding the applicability of the statute).  This potential absurdity can best be resolved by turning to the statute itself and considering the legislative intent.  We note that 
First of America
 criticized focusing on legislative intent to determine whether a statute has retroactive affect.  
First of America
, 171 Ill. 2d at 290.  However, in the present case we must examine legislative intent to determine whether the criminal and evidentiary provisions of the eavesdropping statute can be construed harmoniously to avoid absurd or contradictory results.  See 
People v. Acevedo
, 275 Ill. App. 3d 420, 426 (1995) (holding that, when considering legislation, courts must select an interpretation that leads to logical results and avoids that which would be absurd).

Section 14--5 of the Code, which has not been amended, provides in pertinent part that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial."  720 ILCS 5/14--5 (West 1998).  Our role in construing a statute is to give effect to the legislature's intent as determined in light of the objective the statute sought to achieve and the evils it desired to remedy.  
People v. Scharlau
, 141 Ill. 2d 180, 192 (1990).  Section 14--5 has been interpreted by the courts of this state to be the legislature's expansion of the exclusionary rule and express adoption of the "fruit of the poisonous tree" doctrine.  
In re Marriage of Almquist
, 299 Ill. App. 3d 732, 737 (1998); 
People v. Maslowsky
, 34 Ill. 2d 456, 464 (1966).

The primary purpose of the exclusionary rule is to deter police misconduct, but it also serves other important purposes, including the preservation of judicial integrity.  
People v. McGee
, 268 Ill. App. 3d 32, 42 (1994).  Section 14--5 serves the purposes of the exclusionary rule in both ways.  First, by excluding illegally obtained evidence, it provides an additional deterrent to would-be eavesdroppers beyond the threat of criminal prosecution and supports the basic principle that no one should benefit from an illegal act (see 
Boruschewitz v. Kirts
, 197 Ill. App. 3d 619, 623-

24 (1990)).  Second, it protects the integrity of the court system because the courts will not be asked to condone the illegal gathering of evidence.  See 
McGee
, 268 Ill. App. 3d at 42.

In the present case, these principles do not weigh in favor of the retroactive application of the amended statute.  First, there was no need to deter Carrion from recording the conversation because her actions were not illegal at that time.  Moreover, it is impossible to deter past behavior.  Second, the admission of the audiotape recording does not offend judicial integrity because the tape is not the product of an illegal act.  Accordingly, we conclude that the retroactive application of the amendment to section 14--1 does not promote the public policy behind the eavesdropping provisions of the Code and hold that the admissibility of a recording allegedly made in violation of the eavesdropping statute is governed by the language of the statute in effect at the time of recording.  Such an interpretation avoids the potentially contradictory and absurd result in which the courts could be forced to find a recording was made in violation of the eavesdropping statute when asked to admit the evidence but simultaneously find that the recording did not violate the statute if the eavesdropper was prosecuted for the crime.

Defendant also argues that the State failed to present an appropriate foundation for the admission of the audiotape recording.  
Ordinarily, a defendant must both object at trial and raise the issue again in a posttrial motion to preserve the question for review.
 
See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  This rule is particularly appropriate when a defendant argues that the State failed to lay 
the proper technical foundation for the admission of evidence because the lack of a timely and specific objection deprives the State of the opportunity to correct any deficiency in the foundational proof.  
People v. Bynum
, 257 Ill. App. 3d 502, 514-15 (1994).  Defendant concedes that no objection was made at the trial level on this basis; accordingly, we find that this issue was waived.

However, defendant attempts to avoid the waiver rule by  contending that he was denied the effective assistance of counsel when his attorney failed to challenge the foundation for admission of the audiotape.  We disagree.  
Illinois follows the two-part 
Strickland
 test for ineffective-assistance-of-counsel claims.  
People v. Albanese
, 104 Ill. 2d 504, 526 (1984), adopting the rule in 
Strickland v. Washington
, 466 U. S. 668, 80 L. Ed. 2d 674, 104 S.Ct. 2052 (1984).  In order to establish ineffective assistance, a defendant must show that (1) his attorney's performance was ineffective and (2) that he was prejudiced as a result.  
Albanese
, 104 Ill. 2d at 525-26.
  However, a court may proceed directly to the second prong of the 
Strickland
 test and need not examine effectiveness in the absence of prejudice.  
People v. Edgeston
, 243 Ill. App. 3d 1, 12 (1993), citing 
People v. Enoch
, 146 Ill. 2d 44,  56-57 (1991).

In this case, defendant cannot demonstrate prejudice. To establish prejudice a defendant must show that the outcome would have been different.  The tape recording was a damaging piece of evidence, and we cannot find the jury's verdict would have been the same had it not heard defendant's admissions on that tape.  However, defendant must demonstrate not merely that the admission of the tape prejudiced him; he must demonstrate that, but for his attorney's alleged error, the tape would not have been admitted. 

Defendant argues that Carrion was unable to testify that the tape recording accurately recorded the conversation.  See 
People v. Griffin
, 148 Ill. 2d 45, 56 (1992).  However, if defendant had raised his challenge at trial, the State could have presented an alternative foundation for the tape.  See 
Bynum
, 257 Ill. App. 3d at 514.  For example, the State may have been able to use Carrion's prior testimony to establish that the conversation was accurately recorded.  Furthermore, Carrion testified as to how she made the tape and identified the voices.  Even in the absence of a witness that can testify to the accuracy of a conversation, a proper foundation for an audiotape recording may be established through, 
inter alia
, evidence of the mechanical capabilities of the recording machine, evidence of the chain of custody, and identification of the speakers.  
People v. Estrada
, 91 Ill. App. 3d 228, 237 (1980).

We conclude that defendant has demonstrated, at best, that the State 
did not
 lay the proper foundation for the admission of the audiotape; he has not demonstrated that the State 
could not
 do so.  Because defendant cannot affirmatively establish from the record that the State, if given the opportunity during trial, could not have established a foundation for the tape, we conclude that defendant has not established the prejudice component of the 
Strickland
 analysis and cannot establish ineffective assistance of counsel.  See 
Edgeston
, 243 Ill. App. 3d at 12.

[Nonpublishable
 material removed under Supreme Court Rule 23.]

CONCLUSION

In the nonpublished portion of this opinion, we conclude that the State proved defendant guilty beyond a reasonable doubt.  We further hold that the trial court properly excluded the testimony of his mother, that defendant was not denied the effective assistance of counsel when his attorney withdrew his objection to the jury's question, and that defendant's sentence was not excessive.  However, we find that the trial court erred when it failed to determine whether defendant's home detention was custodial and failed to calculate defendant's credit for time served and vacate the mittimus.  On remand the trial court is directed to determine whether defendant is entitled to credit for time served in home detention, calculate the defendant's total credit for time served, and enter a corrected mittimus reflecting the appropriate credit.  For the reasons stated in the published portions of this opinion, we hold that the trial court properly admitted the audiotape recording of defendant's conversation with Carrion.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded with directions.

Affirmed in part and vacated in part; cause remanded with directions.

COLWELL, J., concurs.

JUSTICE GALASSO, dissenting:

I respectfully dissent.

The majority has decided to place emphasis on the purpose of the exclusionary rule in its analysis of whether or not the amended version of the eavesdropping statute (720 ILCS 5/14--1(a) (West 1998)) applies to this case.  Such an analysis is not appropriate in considering whether the prior statute or the amended statute applies.

Our supreme court held in 
First of America Trust Co. v.
 
Armstead
, 171 Ill. 2d 282 (1976), that where no vested rights are involved an amendment can be applied to the existing controversy.  As the majority acknowledges, the supreme court in 
First of America Trust
 held that the law in effect at the time of the appeal should be applied unless doing so would interfere with a vested right.  There was no suggestion by the supreme court that it was referring to the vested right of a nonparty to the controversy.

The majority determines the amendment cannot be applied because the application of the amendment affects the vested right of a State witness (Carrion).  I have difficulty understanding why this court should look to a witness's interest.  I am unaware of any case that supports such a theory.  To hold that our decision affects or applies to the witness (Carrion) has no merit.  She is not a party; she is not a defendant; she is a witness.

As the majority recognizes, when the application of an amended act adversely affects a vested right of a party or when such application offends the basic notions of due process, the Illinois Constitution prohibits its application.

If there was merit to the proposition that the witness's interest must be considered, it is clear the law in effect at the time of her 
act
 is the law that applies to 
her conduct
.  She is protected by the Illinois and United States Constitutions.  In the truest sense, she stands under the protective umbrella of 
ex
 
post
 
facto
.  Therefore, even if we were to consider the witness's interest, there is no disadvantage to the witness.

I would hold, in following 
First of America Trust
, that the law in effect at the time of the second trial should have been applied and therefore the tapes should have been excluded.  Accordingly, I would reverse and remand for a new trial.